■ JAMES EMMI, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 68691.)—In a claim to recover damages for personal injuries, the claimant appeals from a judgment of the Court of Claims (Lengyel, J.), dated April 23, 1987, which, after a nonjury trial, is in favor of the State and against him.

Ordered that the judgment is reversed, on the facts and as a matter of discretion, without costs or disbursements, and claimant is awarded judgment against the State on the issue of liability to the extent that the State is found 50% at fault in the happening of the accident, the remaining 50% of the fault is apportioned to the claimant, and matter is remitted to the Court of Claims for a trial on the issue of damages.

The claimant James Emmi, an inmate at the Ossining Correctional Facility, allegedly sustained injuries, including a

skull fracture, as a result of his having slipped on some grease while walking along a prison corridor. Although there were no eyewitnesses to the incident, a former inmate, Edward Donald McCormack, testified at the trial that he had observed a skid mark approximately two feet long in a patch of grease on the corridor as he escorted Emmi to the prison hospital. The incident occurred, according to the claimant, in a well-frequented corridor of "7 Building" which led to various administrative offices, the prison hospital and inmate telephone room. The corridor, which was built on an incline, also led to an outdoor trash dumpster.

Emmi and McCormack testified that plastic garbage bags containing leftover food from meals served to prisoners confined in their cells were regularly dragged along the floor of the corridor to the dumpster, causing the bags to break and leaving a trail of refuse on the floor. Typical of the food debris to be found on the floor, according to their testimony, were bits of leftover vegetables, potatoes, meat and butter. Emmi and McCormack maintained that the corridor was generally dirty and only erratically cleaned depending on the diligence of supervision of the inmate porters by individual correction officers. According to McCormack, the floor remained greasy, even when mopped, because the water would bead up and without close supervision, the porters would not properly scrub the floor. The examination before trial testimony of another former Ossining inmate, Gary E. Valejo, which was admitted into evidence, presented a similar version of conditions in the corridor. No evidence of prior accidents in the corridor was presented.

The State's sole witness, Correction Officer Winston Grell, who was responsible for supervising garbage disposal through the corridor during one eight-hour shift per day, testified that the corridor was always kept clean "for the mere fact that we have the brass always walking around and you generally have to keep the area clean, because if its filthy, they would jump on me. I didn't want any problems". Grell initially maintained that the garbage transported through the corridor was composed primarily of paper, but admitted on cross-examination that the garbage also included leftover food from the three daily meals served to approximately 75 prisoners who were confined to their cells. According to Grell, garbage bags were transported to the dumpster through the corridor by cart and he had no knowledge of the bags ever being dragged through the corridor. Grell did admit to sometimes observing water leaking from bags piled up for disposal. Grell testified further

that during his shift, the corridor was swept 2 or 3 times and mopped once or twice. Asked why the floor was swept and mopped so frequently if there was no debris on it, Grell replied that the floor was dusty.

At the conclusion of the trial, the court granted the State's motion to dismiss the claim, resolving the conflicting testimony in the State's favor and finding that the corridor was "reasonably safe for those who exercised ordinary care". The trial court found Grell's testimony that he would suffer the consequences if the corridor were filthy, coupled with lack of any indication of prior accidents, to be persuasive. It also emphasized that "It must be remembered that we are concerned with a facility at which hundreds of inmates and employees reside and are fed daily, activities which necessarily generate a large amount of garbage and refuse." We reverse.

It is well established that this court's power to review the facts "is as broad as that of the trial court * * * and that as to a bench trial [this court] may render the judgment it finds warranted by the facts, taking into account in a close case 'the fact that the trial judge had the advantage of seeing the witnesses' " (Northern Professional Park Assocs. v Town of Bedford, 60 NY2d 492, 499, quoting from York Mtge. Corp. v Clotar Constr. Corp., 254 NY 128, 133-134).

Our analysis of the record indicates that the evidence adduced at trial does not sustain the trial court's resolution of the factual issues and its conclusion of nonliability on the part of the State. As a landowner, the State must act as a reasonable person in maintaining its property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others and the burden of avoiding the risk (Miller v State of New York, 62 NY2d 506, 513). The claimant and two former inmates testified that for a number of months prior to the accident, it was common practice for porters to drag plastic garbage bags through the corridor, causing the bags to tear and refuse to leak out onto the floor. While we are not unmindful of the trial court's observation that "we are concerned with a facility at which hundreds of inmates and employees reside and are fed daily, activities which necessarily generate a large amount of garbage and refuse", we nevertheless conclude that the evidence adduced at trial clearly established that the State, as a landowner, breached its duty of maintaining its property in a reasonably safe condition (see, Miller v State of New York, supra).

Although claimant presented no evidence with respect to

the length of time that the patch of grease upon which he had slipped was present, the existence of debris primarily composed of food remnants on the floor of the corridor on a regular basis in the year preceding the accident was sufficient to constitute constructive notice *(see, Cooper v Smithtown Cent. School Dist.,* 83 AD2d 828). In this regard, we note that the record amply demonstrates that the dangerous condition complained of in the corridor could have been avoided with little burden on the State by diligent supervision of the inmate porters assigned to transport garbage through the area.

Although we conclude that the claimant proved a prima facie case of negligence against the State based on the existence of a dangerous condition in the corridor, we also conclude, based upon our examination of the record, that the claimant was not without fault in the incident. The claimant admittedly had prior notice of the existence of the hazardous condition and could have exercised greater care in traveling along the corridor. Based upon our assessment of the evidence in the record, we conclude that an appropriate apportionment of fault is 50% to each party. Mollen, P. J., Brown, Rubin and Kooper, JJ., concur.