■ PETER SCIARABBA, as Administrator of the Estate of CHARLES SCIARABBA, Deceased, Appellant, v STATE OF NEW YORK, Respondent.—Levine, J. P. Appeal from a judgment in

favor of the State, entered December 13, 1990, upon a decision of the Court of Claims (Hanifin, J.).

Claimant commenced this action against the State seeking damages for wrongful death based on the medical treatment his son (hereinafter decedent) received while a student at the State University of New York at Binghamton in Broome County. Decedent died on March 1, 1988 due to an intracerebral abscess in the frontal lobe of his brain. The day before, February 29, 1988, he had gone to the school's clinic complaining of a throbbing and persistent headache. A preliminary examination by a clinic staff nurse revealed that there was swelling in decedent's lymph glands and that he had apparently lost 16 pounds, but that his blood pressure and temperature were normal.

Previously, on February 18, 1988, decedent had visited the emergency room of a private hospital and been diagnosed as having sinusitis and given a prescription for an antibiotic drug known as erythromycin. Decedent told the nurse of the prior treatment he had received. Decedent was then examined by Melvin Jones, the medical director of the clinic, who found that decedent had swollen glands, complained of a headache and had been vomiting (apparently due to the erythromycin). The vomiting had subsided, however, and decedent's appetite had improved. Jones' preliminary diagnosis was that decedent's symptoms were more consistent with mononucleosis and not sinusitis, but he prescribed erythromycin for any residual sinusitis and ordered a blood test. Decedent was instructed to call the next day (March 1, 1988) at 1:00 P.M. to get the results of the blood test. Jones did not conduct a neurological examination of decedent and did not hospitalize decedent.

At trial, claimant essentially argued that Jones was guilty of medical malpractice because at the time of his examination of decedent he should have realized that decedent was seriously ill and should have, *inter alia,* conducted further tests and immediately hospitalized decedent. The Court of Claims rejected this argument and dismissed the claim after trial. Claimant has appealed.

We affirm. The dispute in this case centers on whether Jones' actions upon examining decedent were a matter of professional judgment within the range of accepted medical standards or whether they constituted malpractice *(see, Oelsner v State of New York,* 66 NY2d 636, 637). A doctor is not liable for a mere mistake in professional judgment after careful examination *(see, Pigno v Bunim,* 43 AD2d 718, *affd* 35

NY2d 841), absent a deviation from accepted medical practice *(see, Schrempf v State of New York,* 66 NY2d 289, 295; *Johnson v Yeshiva Univ.,* 42 NY2d 818, 820). Here, on the record before us, we cannot say that the Court of Claims erred in determining that Jones exercised due care in the treatment and diagnosis of decedent. In doing so we note that the court's findings were based on its resolution of matters of credibility and, insofar as it had the advantage of hearing and seeing the witnesses firsthand, we are reluctant to disturb its findings in this regard *(see, De Luke v State of New York,* 169 AD2d 916, 917).

Thus, we reject claimant's contention that the Court of Claims erred in finding that decedent did not appear seriously ill and that he was not dehydrated. On February 29, 1988, decedent told the nurse that his symptoms had improved and that although his headaches continued, he was no longer vomiting and his appetite had improved. Jones testified that decedent did not look sick and appeared to be someone who had been ill but was recovering. As to the question of dehydration, the nurse testified that decedent's skin color was normal, that he looked well-nourished and that his blood pressure and pulse were normal. We find no reason to overturn the acceptance of the foregoing testimony by the Court of Claims.

Claimant next contends that the failure to order blood tests on an emergency basis, the failure to perform a neurological examination and the diagnosis of mononucleosis constituted malpractice. The medical testimony on all of these points, however, was conflicting. Although claimant relies on the opinions expressed by his medical experts, there was expert testimony that, on each of these points, Jones' actions did not constitute a departure from good medical care. Jones testified that decedent showed no signs of neurological problems and that he was fully conscious with no evidence of dizziness, slurred speech or signs of paralysis or convulsions. All of the experts agreed that the above were symptoms of increased intracranial pressure and there was expert testimony that the symptoms Jones did observe were consistent with a diagnosis of mononucleosis. We therefore find no reason to disturb the court's conclusion that Jones' actions were not a departure from accepted standards of medical care *(see, Chapman v State of New York,* 97 AD2d 975).

Finally, we reject claimant's contention that once Jones received the results of the blood test he should have immediately contacted and hospitalized decedent. Again, while there was expert opinion to the contrary, there was also expert

testimony that Jones' actions upon receipt of the blood test results did not constitute malpractice.

Mercure, Mahoney and Casey, JJ., concur. Ordered that the judgment is affirmed, without costs.