■ CARLOS I. MARTINEZ, an Infant, by His Mother and Natural Guardian, AIDA MARTINEZ, Respondent, v GOUVERNEUR GARDENS HOUSING CORPORATION, Defendant, AKTIEBOLAGET CTC et al., Appellants, and WASCO MAINTENANCE & REPAIR SERVICE, INC., Respondent. WASCATOR AND WASCOMAT OF AMERICA, Third-Party Plaintiff-Appellant, v A.B. ELECTROLUX, Third-Party Defendant-Appellant. WASCATOR AND WASCOMAT OF AMERICA, Fourth-Party Plaintiff-Appellant, v CORO-

NAVERNKEN CTC et al., Fourth-Party Defendants-Appellants, and SUPER PAK CO., INC., et al., Fourth-Party Defendants-Respondents.—Judgment, Supreme Court, New York County (Ira Gammerman, J.), entered February 7, 1991, after a jury trial, which, *inter alia*, granted defendant Wasco Maintenance and Repair Service, Inc.'s post-trial motion to set aside the verdict and dismiss the complaint and all cross-claims as against it, and awarded plaintiff $638,244.44, inclusive of interest and costs, against defendant Bermil Industries Corp. only, unanimously affirmed, with costs.

The infant plaintiff, then three and one-half years old, was injured in 1980 when he opened the door of a front loading commercial washing machine and placed his hand inside while the machine was in a spin cycle. The washing machine was purchased by defendant Bermil Industries in Sweden, where it had been manufactured in 1968, and sold in the United States in 1970 to Gouverneur Gardens Housing Corporation, which installed the machine in its housing complex.

Plaintiff brought an action sounding essentially in strict products liability on the basis that the machine was not equipped with a solenoid interlock mechanism which would have prevented the door from opening while the drum was spinning. Bermil claimed that Wasco, the company that serviced and repaired Gouverneur's washing machines, was primarily responsible for the injury, because Wasco had failed to advise Gouverneur of the availability of an interlock kit that could be installed on the machine, and failed to recommend such installation. Bermil claimed that Gouverneur was primarily responsible for the injury because it had received warning mailings offering to supply a retrofit kit to install the interlock device, but Gouverneur did not avail itself of the kit. Bermil also claimed that the machine was not defective in design when it was manufactured. Plaintiff introduced evidence that the manufacturer had produced washing machines in 1968 equipped with an interlock device, but that such machines were shipped only to European markets, and not the United States.

The jury awarded plaintiff $800,000 in damages, apportioned 70% against Bermil, 20% against Gouverneur (which settled with plaintiff prior to submission of the case to the jury) and 10% against Wasco. The trial court disposed of post-trial motions by setting aside the verdict against Wasco and dismissing the complaint and cross-complaints against Wasco, reapportioning liability accordingly, and directing judgment against Bermil in the amount of $622,222.22 plus interest.

Bermil's argument that the trial court committed reversible error in failing to charge the jury on the principle of intervening or superseding cause (PJI 2:72) is without merit. The Court of Appeals has stated with regard to this principle: "If the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct, it may well be a superseding act which breaks the causal nexus [citations omitted]." *(Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 315; *see also, Kush v City of Buffalo,* 59 NY2d 26, 33.) We agree with the trial court's finding, implicit in its declining to submit Bermil's request to charge intervening cause, that Gouverneur's failure to install an interlock kit, and Wasco's failure to recommend such installation, did not warrant such an instruction. Neither "event" (failure to recommend or to install safety modifications on an unsafe machine) could reasonably have been found by the jury to be extraordinary or unforeseeable under the facts of this case *(see, Miller v Board of Educ.,* 291 NY 25, 29-30 [board of education liable for failure to repair a fire escape door, though plaintiff would not have been injured had teacher not failed to supervise plaintiff's play]; *compare, Mercado v Vega,* 77 NY2d 918).

Bermil has not called to our attention any New York cases that have held nonfeasance, as opposed to active negligence or misfeasance, of a purchaser as constituting an intervening or superseding act that will entirely relieve the manufacturer of responsibility for introducing an unreasonably hazardous machine into the marketplace *(but cf.,* Restatement [Second] of Torts § 452, illustration 10).* In any event, it is clear that the jury found Gouverneur's and Wasco's nonfeasance to be concurrent, rather than intervening or superseding causes of the accident, by virtue of their apportioning 70% responsibility against Bermil, and only 20% and 10% against Gouverneur and Wasco respectively.

We also reject Bermil's argument that a directed verdict should not have been granted in favor of Wasco. Repairmen

---

* "A manufactures and sells an automobile with a defective hood catch, creating the danger that on a rough highway the hood will fly up and obscure the vision of the driver. The car is sold by a dealer to B. A is notified of the defect in its car and the danger, and sends out to its dealers a new safety catch for installation in all such cars, in order to remedy the defect. The dealer calls B, and offers him the new safety catch, warning him of the danger and urging him to install it. B refuses to do so. After driving the car for a year, B sells it to C, who is ignorant of the danger. While C is driving the car, the hood flies up, and C is injured. A is not liable to C."

are not held accountable in strict products liability when they repair an already marketed product; rather strict products liability should ordinarily be imposed only against the party who actively introduces a product into the market *(Brumbaugh v CEJJ, Inc.,* 152 AD2d 69, 71).

Finally, the jury's award of $800,000 for past and future pain and suffering associated with the comminuted fracture of plaintiff's arm, and for the resulting ten inch keloidal scar, shortening of the arm and atrophy, while perhaps on the high side, does not constitute a material deviation from what would be reasonable compensation (CPLR 5501 [c]; *Roshwalb v Regency Mar. Corp.,* 182 AD2d 401).

We have considered Bermil's other arguments and find them to be without merit. Concur—Carro, J. P., Milonas, Kupferman, Asch and Smith, JJ.