■ MARK KANDRACH, Appellant, v STATE OF NEW YORK, Respondent.—Levine, J. Appeal from a judgment in favor of the State, entered August 6, 1991, upon a decision of the Court of Claims (Hanifin, J.).

The facts in this case are not significantly in dispute. Claimant, 25 years old when the accident giving rise to this action occurred on July 3, 1985, was an inmate in the State correctional system recently committed to Camp Summit Correctional Facility in Schoharie County. As part of an inmate work program he was assigned to a sawmill operated by the Department of Environmental Conservation. Claimant was given an initial orientation on the functioning of the sawmill, which included safety lectures with regard to cutting and hauling cut trees and the use of sawing tools and equipment. He was then assigned to operate a woodchipper at the sawmill. None of the previous safety instructions covered the use of the woodchipper. Claimant's training with respect to this device was given by Correction Officer Richard Smith, who was in charge of the 12- to 15-inmate work detail at the sawmill. The training consisted of about a five-minute demon-

stration of how to insert wood into the feeder opening of the woodchipper and, according to the initial testimony of both claimant and Smith, an instruction that if the machine clogged or was otherwise not working properly to shut the motor off and notify Smith. On being recalled as a witness by the State, Smith testified that he also told claimant to "be careful" because the machine was "dangerous".

The woodchipper was a gas-powered device consisting of a feeder chute, leading to a chamber or drum where the chipping took place by the log or wood coming into contact with and being cut into small pieces by the blades of a rotor spinning at about 4,000 revolutions per minute. From this chamber the chips were ejected into and through an attached tubular discharge chute which was square at its base where it met the outlet of the cutting chamber. The base of the discharge chute was connected to the cutting chamber by brackets permitting the discharge chute to be separated by pulling the chute away from the chamber and then upwards. When the discharge chute was thus separated from the cutting chamber, the rotor blades would be exposed. To prevent any such separation from taking place inadvertently, the woodchipper was originally equipped with a flanged bracket welded on the discharge chute and a hinged locking bar bolted on the cutting chamber. To secure the discharge chute firmly to the cutting chamber, the locking bar would be lowered into the flange and then fixed in place by a "hairpin" inserted on the bracket. The locking bar, however, had been removed from the woodchipper on some unknown date prior to the accident. It was already off the machine when Smith began supervising inmates at the sawmill seven or eight months earlier. A makeshift arrangement was substituted, consisting of a chain inserted into the hook or small handle on top of the base of the discharge chute and then wrapped around the cutting chamber. This, however, left a space between the base of the chute and the opening of the cutting chamber of approximately 1½ to 2 inches.

The uncontradicted testimony was that claimant had not been shown the inside of the cutting chamber when Smith instructed him on the operation of the woodchipper or at any other time. During the morning of July 3, 1985, claimant was operating the woodchipper when he noticed that, apparently because of some misalignment of the rotor blades, the wood was coming out of the cutting process as strips of substantial length and width, rather than as chips. Additionally, as he testified, some of the strips were being ejected through the

gap, caused by the absence of the locking bar, between the outlet of the cutting chamber and the base of the discharge chute and there were "strips sticking out of the hole from the gap". Apprehensive that these strips would clog the machine, claimant climbed onto the chassis of the woodchipper and pulled the base of the discharge chute further apart from the cutting chamber while he attempted to pull out the strips from the aperture. He testified that his hand was about six inches from the blade when, apparently, the strip he was holding was pulled back into the cutting chamber by the rotating blades and his left hand was pulled in with the strip he was holding, bringing several fingers into contact with the blades and resulting in the partial amputation of three fingers.

Claimant commenced this negligence action against the State claiming that the State breached its duty of care in, inter alia, (1) failing to furnish him with a safe place to work by providing him with a dangerously defective woodchipping machine, and (2) failing to warn him as to the dangers of using the woodchipper or adequately instructing him in the safe operation of the device.

Following a trial, the Court of Claims dismissed the claim. The court found that the State was indeed negligent in failing to replace the locking bar on the woodchipper. However, the court further found that the State's negligence was not a proximate cause of the accident; rather, that the sole proximate cause was claimant's disregard of Smith's instructions. According to the Court of Claims, claimant was furnished a safe place to work, in front of the feed chute of the woodchipper, and would have been unharmed had he remained there. The court also concluded that there had been no breach of any duty to warn, because claimant's accident was the first instance in which woodchips came out of the space between the cutting chamber and the discharge chute. Finally, the court deduced that the absence of the locking bar was not a proximate cause here because of its conviction that claimant would have merely unhooked the locking bar had it been in place in order to follow the same course of action in order to remove the wood strips. Claimant appeals.

In a nonjury case such as this, our inquiry is not limited to whether the trial court's findings were supported by credible evidence. Rather, if it appears on all the credible evidence that a finding different from that of the trial court would not have been unreasonable, we must weigh the probative force of the conflicting evidence and the relative strength of conflicting

inferences that may be drawn therefrom, and then grant the judgment which upon the evidence should have been granted by the trial court *(see, Koester v State of New York,* 90 AD2d 357, 363-364; *Shipman v Words of Power Missionary Enters.,* 54 AD2d 1052, 1053).

From our examination of the record, the evidence educed at the trial certainly could reasonably have supported a finding that the accident was partially caused by the negligence of the State, thus bringing into play this Court's fact-finding power in nonjury cases. It is settled law that when the State, through its correctional authorities, directs a prison inmate to participate in a work program during incarceration, it owes the inmate a duty to provide reasonably safe machinery and equipment with which to work and adequate warnings and instructions for the safe operation of such machinery and equipment *(see, Callahan v State of New York,* 19 AD2d 437, 438, *affd* 14 NY2d 665; *see also, Palmisano v State of New York,* 47 AD2d 692, 693). Here, claimant's qualified expert testified that the locking bar was a safety device to prevent a worker in close proximity to the woodchipper from inadvertently coming into contact with the exposed rotor blades in the cutting chamber. This testimony was not only credible, it was implicitly accepted by the Court of Claims in finding the State negligent for not restoring the locking bar. Negligence is essentially defined as the breach of the duty to conform to a standard of conduct for the protection of others against unreasonable risks of harm *(see,* Prosser and Keeton, Torts § 30, at 164 [5th ed]; Restatement [Second] of Torts § 282). Thus, only if the locking bar is viewed as a safety device, the absence of which increased claimant's risk of harm, could the Court of Claims have reasonably concluded that the failure to replace it on the woodchipper constituted negligence. This being so, it would also have been entirely reasonable to conclude that the absence of the locking bar was a proximate cause, i.e., a substantial factor in bringing about claimant's accident. Claimant's injury occurred, at least in part, because the chain substituted for the locking bar permitted a space to be created exposing the rotor blades of the cutting chamber, the very risk the locking bar was designed to forestall. This is sufficient to demonstrate the rationality of a finding of proximate cause, even if the precise chain of events leading to claimant's injury could not have been foreseen *(see, Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 315-316; *Mesick v State of New York,* 118 AD2d 214, 218, *lv denied* 68 NY2d 611).

Likewise, a trier of fact on this record could reasonably

have concluded that claimant's conduct in disregarding Smith's instruction in placing his hand near the exposed rotor blades was not a superseding cause so as to entirely excuse the State from liability for its own negligence, but merely constituted negligence contributing to the happening of the accident requiring an apportionment of fault. That an inmate's disregard of instructions on the proper use of cutting machinery may appropriately be viewed as a contributing rather than a superseding cause is implicit in our decision upholding an apportionment of liability in *Hicks v State of New York* (124 AD2d 949, 949-950).

Even if we deferred to the Court of Claims' finding of a lack of credibility to claimant's testimony regarding his lack of awareness of the location of the rotor blades when he reached near the exposed aperture of the cutting chamber, the evidence would nonetheless reasonably support rejection of the State's contention that claimant's conduct was a superseding cause. To constitute a superseding cause, the conduct of the injured party must not be merely negligent, it must be reckless, i.e., in conscious disregard of a fully appreciated risk *(see, Kriz v Schum,* 75 NY2d 25, 36-37; *see also, Amatulli v Delhi Constr. Corp.,* 77 NY2d 525, 535). The evidence here clearly supports an inference that claimant was not fully aware of the danger from attempting to remove the strips from *outside* the gap between the cutting chamber and the discharge chute. Indeed, the Court of Claims acknowledged as much: "What did not occur to [claimant] was the fact that if he grabbed some of the wood strips to pull them loose, he faced the risk of those same strips being drawn into the rotor, which is what happened."

In our view, the inferences from the evidence more strongly favor an apportionment of liability based upon the comparative negligence of the State and claimant. We disagree with the conclusion of the Court of Claims that claimant's conduct was a superseding cause. The court's determination was based in part on two inferences, both lacking evidentiary support in the record: (1) that claimant was furnished a safe place to work in front of the feeder chute, which he abandoned, and (2) that even if a locking bar had been in place, claimant would have engaged in the same conduct, in attempting to clear the wood strips from the space between the cutting chamber and the discharge chute, that caused his accident. The record is entirely devoid of any evidence that restrictions were placed on claimant's movements around the woodchipper. Also, the entire testimony concerning the functioning of the locking bar

would only support an inference that the bar would have prevented any gap between the discharge chute and the cutting chamber through which strips could have been partly ejected, thereby obviating any need for claimant to have attempted to remove them. We also attach less importance than did the Court of Claims to claimant's disregard of Smith's instructions to shut off the woodchipper when it was clogged or not working properly. Nothing in these instructions expressly linked the malfunctioning of the machine to any potential safety risk to an operator. Moreover, Smith's own testimony of several occasions when the same instructions were ignored by inmates over a period of seven or eight months made it foreseeable that claimant might not have obeyed them in the form they were given.

For all the foregoing reasons, we conclude that it is appropriate to exercise our fact-finding authority to apportion culpability between claimant and the State (see, Mesick v State of New York, supra, at 219; Wood v State of New York, 112 AD2d 612, 615; Arnold v State of New York, 108 AD2d 1021, 1023, appeal dismissed 65 NY2d 723). Giving deference to the Court of Claims' assessment of claimant's intellectual capability to appreciate at least some risk in placing his hand in proximity to the opening of the cutting chamber and to have recognized that following Smith's instructions was a more prudent course of action, we find that the parties were equally at fault in causing the accident and therefore apportion culpability 50% on the part of the State and 50% on the part of claimant. The matter should therefore be remitted for trial on the issue of damages.

Mikoll, J. P., Yesawich Jr., Mahoney and Harvey, JJ., concur. Ordered that the judgment is reversed, on the facts, with costs to claimant, culpability apportioned 50% on the part of the State and 50% on the part of claimant, and matter remitted to the Court of Claims for trial on the issue of damages.