■ RONALD LOWE, Appellant-Respondent, v STATE OF NEW YORK, Respondent-Appellant. (And Another Related Claim.) [599 NYS2d 639] —Yesawich Jr., J. Cross appeals from two judgments in favor of claimants, entered April 13, 1992, upon a decision of the Court of Claims (Hanifin, J.).

On September 30, 1985, claimant Ronald Lowe (hereinafter claimant), an inmate at Camp Pharsalia Correctional Facility in Chenango County, was seriously injured while performing his assigned duties at the camp sawmill. Claimant's job consisted of cleaning sawdust from a "pit" area beneath the sawblade and placing the sawdust into a hopper, from which it was propelled, by a blower, through a system of ductwork to a waste area. Although claimant was provided with a shovel and a "squeegee" (a T-shaped piece of wood) with which to clean the pit, neither of these items could be used to clean out the small area containing the blower driveshaft. As a consequence claimant had to use his hands to clean the sawdust from around the shaft. While doing so claimant's glove became caught in the shaft, and his left hand and forearm were severed. Testimony adduced at trial established that the facility failed to meet OSHA standards and that the shaft could have been fitted with an inexpensive guard, which would have prevented claimant's injuries.

Damage claims were filed against the State by claimant and belatedly by his wife. Following a bifurcated trial in the Court of Claims, the State was found 100% at fault for claimant's injuries and claimant was awarded a total of $700,000, consisting of $200,000 in past damages and $500,000 in future damages; claimant's wife was awarded $36,000 on her derivative claim, including past damages of $6,000 and future damages of $30,000.

On appeal, the State maintains that claimant was also negligent, for he knew or should have known of the danger inherent in placing one's hands in close proximity to such a rapidly spinning shaft, and he should therefore bear some of

the liability for his injuries. Claimant and his wife, on the other hand, contend that the damages awarded are inadequate and should be increased. After carefully reviewing the testimony and other evidence, considering their probative value and weighing the relative strength of the conflicting inferences which can be drawn therefrom, we affirm the judgments of the Court of Claims.

Claimant was provided cursory safety instructions and was told in general terms not to clean the machinery while it was operating. However, he was also told that he must clean the space around the shaft frequently to keep the sawdust from building up in that area. Furthermore, the evidence includes several photographs from which it is apparent that, as claimant testified, the tools with which he was expected to clean the pit (the shovel and squeegee) could not be used within the narrow shaft area. Essentially, claimant was faced with the dilemma of cleaning the area in the only manner possible, with his hands, or facing the risk of discipline for not performing his duties as directed by his supervisors.

Given claimant's plight, he cannot be said to have failed to follow proper safety instructions (compare, Hicks v State of New York, 124 AD2d 949, 949-950) or to have ignored a danger which he should have foreseen (compare, Halstead v Kennedy Valve Mfg. Co., 36 AD2d 1005, 1007, affd 31 NY2d 901). Moreover, considering the penalties which may be imposed for not following orders in a prison environment, it would not have been unreasonable for claimant to proceed as directed even had he been fully aware of the risk (cf., Broderick v Cauldwell-Wingate Co., 301 NY 182, 188). We find no reason to exercise our authority to apportion liability under these circumstances (compare, Kandrach v State of New York, 188 AD2d 910, 914-915; Mesick v State of New York, 118 AD2d 214, 219, lv denied 68 NY2d 611).

With regard to damages, the Court of Claims found that because the State had paid all of claimant's medical bills and no further treatment was necessary, no award for medical expenses was warranted. Likewise, no award was made for loss of household services, as the court found there to have been no proof that claimant performed any significant amount of household work prior to his injury, that outside help was required or that claimant's wife had to assume additional tasks as a result of claimant's disability. We concur with these findings.

Claimant takes issue primarily with the Court of Claims' determination that he suffered negligible impairment in his

earning ability, and with the court's concomitant refusal to make an award for lost earnings. Although the Court of Claims did not set forth explicitly which portions of the expert testimony it chose to accept or to reject, given all of the evidence we find it was reasonable to conclude that the accident did not significantly limit claimant's earning ability.

Claimant's expert set forth three methods for estimating the loss in earning capacity effected by the accident: claimant's postaccident wages were compared with the wages earned by an electrician (claimant had received training in the electrical trade while in prison), an average worker with an educational background similar to that of claimant and a health care worker (the last field in which claimant worked prior to his incarceration and the accident). These calculations were seriously flawed, however, in that they did not include significant adjustments for claimant's criminal history (he was 33 years old at the time of the accident and had three felony convictions), his dismal work record or the possibility that he would have been reincarcerated had he not been injured. In light of claimant's criminal history, it is simply unreasonable to treat the recidivism factor as negligible, as claimant's expert did. It is also unrealistic to estimate the value of claimant's future earnings as though he were in every respect average, an assumption belied by his work record, and then to subtract the wages he is currently earning and attribute the entire difference to his disability. We find no fault with the Court of Claims' apparent rejection of the views of claimant's expert.

The State presented its own expert testimony on the issue of lost earnings. After considering claimant's three felony convictions, which were found to be a major impediment to his obtaining any position at all, let alone a high-paying one such as that of a New York City electrician,[1] and also taking into account claimant's poor work record[2] and undesirable discharge from the armed services (see, White v State of New York, 167 AD2d 646, 647-648), the State's expert concluded that the accident had caused only a minimal diminishment, if any, in claimant's earning capacity. Because claimant never worked in a position that provided fringe benefits before the accident, and because he is qualified for many positions where such benefits are available, the State's expert properly con-

---

1. It is worth noting that claimant had been turned down for an apprenticeship in the electricians' union, presumably due to his criminal record.

2. Claimant's work record from 1973 until 1984, when he last entered prison, generously viewed was minimal at best. His greatest annual earnings, achieved in 1984, were $10,956.

cluded that no adjustment needed to be made for lost fringe benefits. A vocational rehabilitation counselor also testified as to the myriad occupations for which claimant is, or could become, qualified despite his disability.

Based on the record, the Court of Claims, in our view, fairly concluded that claimant failed to present sufficient proof that he had sustained a significant loss of past or future earnings because of his injury. The court's refusal to make such an award was therefore fully justified.

The damages which were awarded were intended to compensate claimant for past pain and suffering, as well as for the "impact of [the] disability" on his daily life, implicit in which are such factors as loss of quality of life, inability to perform certain day-to-day activities at all or to perform them as quickly as before, and inability to participate in sports such as basketball, which claimant previously enjoyed. No award was made for future pain and suffering because the Court of Claims, which had the opportunity to evaluate the worth of claimant's testimony in this respect, expressly found that "claimant experiences little discomfort from his arm at present". On the basis of this record, we are loathe to say that the $700,000 awarded is inadequate and requires adjustment (see, e.g., Le Bel v Airlines Limousine Serv., 92 AD2d 996, 998). Finally, in view of the fact that claimant's marriage was somewhat uneven prior to his accident, to the point where he moved out several times and even listed himself as single when completing prison forms and income tax returns, and the further fact that there was no testimony that his wife had to furnish significant home care for his recuperation or take over any household tasks previously performed by claimant, we do not find the $36,000 awarded on the derivative claim to be inadequate (see, Prata v National R. R. Passenger Corp., 70 AD2d 114, 119; compare, Le Bel v Airlines Limousine Serv., supra, at 998).

Mikoll, J. P., Mercure, Crew III and Casey, JJ., concur. Ordered that the judgments are affirmed, without costs.

