■ CARL CARTER, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 78008.) [598 NYS2d 853] —Mercure, J. Appeals from a judgment and an amended judgment in favor of claimant, entered April 2, 1992 and August 19, 1992, upon a decision of the Court of Claims (Bell, J.).

In October 1988, claimant was an inmate at Camp Gabriels, a minimum security correctional facility in Franklin County, and was assigned to work in the Lake Clear sawmill. Claimant sustained serious injuries, including the traumatic amputation of his left hand up to the middle of his forearm, when he came in contact with a saw blade while attempting to clean accumulated sawdust out of the "edger" machine. Following trial, the Court of Claims awarded claimant damages of $408,825, reduced by 40% to $245,295 as the result of claimant's comparative negligence. Claimant appeals the Court of Claims' assessment of comparative negligence and award of damages.

Initially, our review of the record provides no compelling reason to disturb the Court of Claims' apportionment of fault. Although in reviewing a verdict in a nonjury trial, our authority is as broad as the trial court's (Graf v State, 117 AD2d 910, 911) and we may "grant the judgment which upon the evidence should have been granted by the trial court" (Mesick v State of New York, 118 AD2d 214, 219, lv denied 68 NY2d 611), we accord considerable deference to the trial court's assessment of credibility, given its "advantage of hearing and seeing the witnesses firsthand" (Sciarabba v State of New York, 182 AD2d 892, 894; see, Cipriano v State of New York, 171 AD2d 169, 172, lv denied 79 NY2d 756; De Luke v State of New York, 169 AD2d 916, 917). Further, when an inmate fails to use ordinary care and pursues a dangerous course of conduct, he must take some responsibility for his own negligence (see, Hicks v State of New York, 124 AD2d 949; Telfair v State of New York, 87 AD2d 610).

Claimant testified that he was required to crawl under the operating edger machine approximately six times each work day and manually remove accumulated sawdust from an exhaust hole on the bottom of the machine. Otherwise, the machine would become clogged, forcing the temporary shutdown of the sawmill and risking issuance of a disciplinary report against claimant. On the occasion in question, claimant had finished removing the sawdust and was backing out from

under the edger when he felt a pain in his lower back. In attempting to sit up on his knees to stretch his back, claimant caused his hand to come in contact with the edger blade. Although claimant's testimony was corroborated by former inmates Wendall Banks and Juan Vargas, former inmate Theodore Le Moine and Correction Officer David Petrashune testified that the sawdust could and should have been removed during the shutdown of the machinery at lunch time and at the close of the day, without risking a clog. In fact, Le Moine testified that he twice instructed claimant not to go under the machine when it was running. Further, claimant acknowledged that he was aware of the danger of crawling under an operating machine and that he should "stay away from those blades", that he could have cleaned out the exhaust hole at noon and at the 3:00 P.M. shutdown, and that his injuries were the result of his own voluntary act of trying to stretch his back while under the machine. Under the circumstances, the record amply supports the Court of Claims' apportionment of responsibility for the accident.

We agree with claimant, however, that the awards of $225,000 for past and $175,000 for future pain and suffering were inadequate. Following the accident, claimant was airlifted to Albany Medical Center Hospital, where he was hospitalized from October 26, 1988 to January 13, 1989. During that time, claimant underwent 13 operations, including lengthy procedures in which claimant's severed forearm was reattached, the bones reconnected by means of metal rods, and the blood vessels, tendons and nerves reconnected, numerous skin and vein grafts, the amputation of his left finger and the removal of his spleen. During claimant's hospitalization, he lost 45 pounds and suffered considerable pain, requiring the administration of narcotic drugs. Despite the significant medical intervention, claimant has suffered a permanent, significant disability, involving a 95% loss of function to his left hand, and serious disfigurement. The evidence shows that claimant's left arm is shorter than the right, some areas are abnormally thin due to loss of bone and tissue and other areas are abnormally thick due to the placement of an abdominal flap. Further, claimant experiences numbness, stiffness and pain in cold and wet weather and lack of balance as the result of the essentially useless limb. Under the circumstances, we conclude that the award for past pain and suffering should be increased from $225,000 to 350,000 and the award for future pain and suffering should be increased from $175,000 to $350,000 *(see, e.g., Lowe v State of New York,* 194 AD2d 898;

*Martinez v Gouveneur Gardens Hous. Corp.,* 184 AD2d 264, 267, *lv denied* 80 NY2d 759; *Terry v State of New York,* 79 AD2d 1069). As a result, the award for past and present pain and suffering shall be increased by $300,000. Reduced by 40% as the result of claimant's comparative negligence, the net increase to the amended judgment is $180,000, bringing about a total judgment of $425,295, exclusive of interest.

Finally, based upon the proof adduced at trial and claimant's failure to establish his lost earning capacity with reasonable certainty, the Court of Claims did not err in denying claimant an award for the impairment of his earning capacity *(see, Lowe v State of New York, supra; Kirschhoffer v Van Dyke,* 173 AD2d 7, 10).

Weiss, P. J., Levine and Mahoney, JJ., concur. Ordered that the judgment and amended judgment are modified, on the facts, with costs to claimant, by increasing the amended judgment in favor of claimant to the sum of $425,295, with appropriate interest, and, as so modified, affirmed.