■ STANLEY BERNARD, Respondent-Appellant, v STATE OF NEW YORK, Appellant-Respondent. (Claim No. 102988.) [824 NYS2d 481]—

Mugglin, J. Cross appeals from a judgment of the Court of Claims (Collins, J.), entered May 2, 2005, upon a decision of the court following a bifurcated trial which apportioned liability equally between the parties.

On January 5, 2000, at Twin Valleys Outdoor Education Center in Wadhams, Essex County, correctional officer Randy Welch and a crew of inmates, including claimant, arrived from the Moriah Shock Incarceration Correctional Facility to perform logging operations. The temperature at the time was below freezing and rain and/or sleet was falling. Typically, the inmates were used to remove previously cut logs from the woods to a skid trail and then to a staging area where the logs were cut and split for firewood. Inmates would carry smaller logs on their shoulders. They were supplied with a log carrying device* to carry larger logs. They were also supplied with a sled on which one end of the log would be chained leaving the other to drag on the ground to serve as a brake while going downhill.

On this morning, after the inmates obtained their equipment, Welch walked them up the skid trail one-half mile to a log that was approximately 36 inches in diameter and eight feet in length. The terrain was so steep and slippery that the inmates were unable to drag the sled more than a very short distance up the skid trail from the staging area. The skid trail, at the site of the log, was uniformly described as six to eight feet in width, crowned in the center and rutted by tires from a log skidder. At this point, the testimony diverges. Claimant and his fellow former inmates uniformly testified that Welch directed them to bring this log—which he had dubbed "Big Bertha"—to the skid trail while he stood and watched. They described Welch as upset, because his son had been incarcerated, and angry because he believed one of them had stolen a cigarette from him, and that he screamed and cursed at them while they struggled to move the log. They further testified that once they had the log in the road, they hesitated hoping that Welch would call off the project and take them in from the wet and cold. Instead, they all agreed

---

* This device is a wooden handle with two swinging metal hooks attached to the center of the handle with the points of the hooks facing each other. The handle is placed across a log and the hooks are positioned under or hammered into the log and the inmates lift up on the handle to carry the log.

that Welch told them they were not leaving until the log was at the staging area and they should roll it down the trail. The inmates then positioned the log across the trail and removed the log carrying device. Because the trail was crowned, the log teetered and claimant positioned himself on one end of the log, four inmates positioned themselves behind the log and a sixth inmate positioned himself on the other end. Using only their hands, they proceeded to roll the log. After a very few feet, they lost control and, in attempting to jump out of the way, claimant slipped and fell and the log rolled over him, breaking his leg.

Welch testified at his examination before trial that he helped move the log; at trial, he agreed that he did not. Instead, he stated at trial that he left claimant in charge of the crew—after warning them to be careful if the log rolled—while he looked in the woods for a second log. Also at trial, Welch denied ordering the inmates to roll the log. In its decision, the Court of Claims, while recognizing the testimonial inconsistency, found it unnecessary to resolve issues of credibility to find that defendant was negligent and apportioned liability 50% to both claimant and defendant. These cross appeals ensued.

Here, defendant's primary argument is that it owed no duty to warn claimant of an open and obvious condition and the claim should be dismissed. If not dismissed, defendant states that the 50% apportionment of liability is proper. Claimant contends that defendant should be found 100% at fault. Based on the following analysis, we agree with claimant. Defendant, through its correctional authorities, owes inmates in a work program a duty to provide safe equipment and proper warnings and instructions regarding the use of such equipment (*see Manganaro v State of New York*, 24 AD3d 1003, 1004 [2005]; *Muhammad v State of New York*, 15 AD3d 807, 808 [2005]; *Maldonado v State of New York*, 255 AD2d 630, 631 [1998]; *Martinez v State of New York*, 225 AD2d 877, 878 [1996]; *Kandrach v State of New York*, 188 AD2d 910, 913 [1992]). However, defendant "is not an insurer of inmate safety, and negligence cannot be inferred solely from the happening of an incident" (*Muhammad v State of New York, supra* at 808 [internal quotation marks and citations omitted]), and there will be no liability where the safety measures taken "were reasonable and adequate under the circumstances" (*Maldonado v State of New York, supra* at 631).

Here, we find ample support in the record that defendant breached its duty to provide safe equipment. Moreover, because the Court of Claims did not resolve issues of credibility, no deference is owed on this issue to the trier of fact. Our review of

the record causes us to conclude that Welch is unworthy of belief and we find liability against defendant also because he ordered the inmates to roll the log down the hill. Under the circumstances presented, claimant's conduct is not a superceding cause precluding recovery because his actions were not so reckless as to constitute an "extraordinary and unforeseeable event[ ] [that will] operate to relieve [defendant] from liability" (*White v State of New York*, 137 AD2d 868, 869 [1988]; *see Kandrach v State of New York, supra* at 914).

While it is settled law that an inmate must use ordinary care when engaging in work programs at the behest of correctional authorities, and an inmate's comparative negligence will reduce his or her recovery accordingly (*see Manganaro v State of New York, supra* at 1004; *Muhammad v State of New York, supra* at 808; *Carter v State of New York*, 194 AD2d 967, 967 [1993]; *Hicks v State of New York*, 124 AD2d 949, 949 [1986]; *see also Kandrach v State of New York, supra* at 914; *White v State of New York*, 167 AD2d 646, 647 [1990]), we take into consideration the special circumstances that confront an incarcerated inmate in assessing whether the inmate was comparatively negligent (*see Martinez v State of New York, supra* at 879; *Lowe v State of New York*, 194 AD2d 898, 899 [1993]). Essentially, claimant was faced with either obeying the order to roll the log down the hill or subjecting himself to possible disciplinary measures, including being removed from the shock incarceration unit and returned to the general prison population. Consequently, even though he testified that he perceived the risk, it was not unreasonable for claimant to proceed as he did. We, therefore, hold that, under these circumstances, defendant is 100% liable for claimant's injuries.

Crew III, J.P., Peters, Rose and Lahtinen, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as apportioned liability equally between the parties; liability is apportioned 100% to defendant; and, as so modified, affirmed.