CHARLES JONES, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 105792.) [878 NYS2d 509]—

Stein, J. Appeal from a judgment of the Court of Claims (Fitzpatrick, J.), entered April 15, 2008, upon a decision of the court in favor of claimant.

Claimant sustained personal injuries when he slipped on a gymnasium floor at Ogdensburg Correctional Facility in St. Lawrence County while incarcerated there. According to claimant, he was shooting baskets during his recreational run when he fell on a slippery substance (a floor cleaning solution used by defendant) on the floor, causing him to land on his left shoulder. Claimant commenced this action alleging gross negligence and reckless indifference on the part of defendant for allowing him to play basketball on the gymnasium floor

while there was cleaning fluid on it.[1] Following a bifurcated trial on the issue of liability, the Court of Claims apportioned fault equally between the parties, having determined that defendant was negligent in creating an unsafe condition but that claimant also had a duty to observe the substance on the floor that caused him to fall. The damages portion of the trial was subsequently held, with the Court of Claims finding that claimant's injuries totaled $50,000. Judgment was thereafter entered in favor of claimant for $25,000. Claimant now appeals, challenging only the Court of Claims' finding that he was 50% liable for his injuries.

Claimant's appeal rests on the argument that the Court of Claims erred in finding that the substance on which he slipped was readily visible and, therefore, that he should have seen and avoided it. We agree. Comparative negligence is an affirmative defense to be pleaded and proved by the party alleging it (*see* CPLR 1412). Here, defendant generally pleaded as an affirmative defense that any injuries or damages sustained by claimant were due in whole or in part to his culpable conduct. However, in response to claimant's demand for a bill of particulars specifying the acts of culpable conduct alleged, defendant indicated that claimant's "injury was sustained during the playing of the game whether as a result of tripping over his own feet or tripping over another's or otherwise." There was no specific allegation of the existence of any open and obvious condition that claimant should have seen and avoided. Thus, if defendant had pursued that theory at trial (which it did not), claimant would have been taken by surprise, nullifying the oft-stated purpose of a bill of particulars, to wit: to "describe the general claims . . . with specificity, thereby limiting proof and preventing surprise at trial" (*MacDormand v Blumenberg*, 182 AD2d 991, 992 [1992]).

However, even if we were to determine that defendant sufficiently pleaded the affirmative defense of comparative negligence, the record is devoid of any evidence of claimant's culpability. Defendant bore the burden of proving that claimant acted negligently by playing basketball in view of the hazardous condition on the court (*see* CPLR 1412; *Zhenfan Zhang v Yellow Tr. Corp.*, 5 AD3d 337, 338 [2004]). While a determination of comparative negligence is ordinarily for the trier of fact and will not be disturbed so long as it is supported by the record evi-

---

**1.** In addition to this cause of action, the claim also alleged constitutional violations resulting from alleged dental malpractice in a separate, unrelated incident at the correctional facility. That aspect of the claim was later dismissed and is not the subject of the instant appeal.

dence (*see Paternoster v Drehmer*, 260 AD2d 867, 869 [1999]; *Coutrier v Haraden Motorcar Corp.*, 237 AD2d 774, 776 [1997]; *Lolik v Big V Supermarkets*, 210 AD2d 703, 704 [1994], *revd on other grounds* 86 NY2d 744 [1995]), in reviewing a decision following a nonjury trial, we are empowered to "independently review the evidence and grant judgment as warranted by the record, giving due deference to the Court of Claims' credibility determinations" (*Jackson v State of New York*, 51 AD3d 1251, 1252 [2008]; *see Seaman v State of New York*, 45 AD3d 1126, 1126-1127 [2007]).

Here, the evidence did not support a finding that claimant failed to use reasonable care (*cf. Lolik v Big V Supermarkets*, 210 AD2d at 704). Claimant testified that, when he arrived at the gym at approximately 10:00 A.M., he requested and obtained permission from Correction Officer Irwin Shaver (the correction officer stationed thereat) to get a basketball, in accordance with prison rules. After getting the basketball, claimant began to dribble down to the far end of the court. He was attempting to make a lay-up shot when he stepped on a slippery substance with his left foot, causing him "to basically sail up in the air and come landing down on [his] left shoulder." He then noticed "a wet substance in kind of a streak" between the foul line and the basket, as well as in other areas around the basket.

Shaver testified that, on the date in question, he was assigned as a gym lobby officer, with responsibility for security and control of the gym, including maintenance of the gym floor. He further testified that the night before claimant's injury, the porters would have sprayed dust mops with a solution and left the mops to dry before using them on the gym floor the next morning at approximately 8:50 A.M. According to Shaver, liquid would not routinely be applied directly to the floor, although in some cases cleaning solution might be applied to the dust mops a second time in the morning. He acknowledged that, if too much solution was on the mop, the floor could become slippery. On the morning of claimant's injury, Shaver stood in the doorway of the gym and looked across the floor, but did not go beyond the entrance to inspect the floor, before deciding to allow claimant to use the area. He testified that it was not possible to see the end of the basketball court where claimant fell from the front desk. He also testified that, when he accompanied

claimant to the area where he fell, he did not see anything on the floor.[2]

Although it was uncontroverted that the substance which caused claimant to slip and fall was the solution used by defendant to clean the floor, there was no evidence of the size, color or shape of the wet area. The only proof regarding the visibility of the hazardous condition was claimant's testimony that he noticed wet streaks on the floor after he fell and Shaver's testimony that he did not recall seeing anything at all, either before or after claimant fell. Inasmuch as there is no evidence in the record upon which it can be discerned that the condition was readily apparent, such a finding is pure speculation (*cf. MacDonald v City of Schenectady*, 308 AD2d 125, 129 [2003]; *Montross v State of New York*, 219 AD2d 845, 845-846 [1995]). Thus, we conclude that the apportionment of liability to claimant was error (*cf. Kandrach v State of New York*, 188 AD2d 910, 915 [1992]; *Emmi v State of New York*, 143 AD2d 876, 879 [1988]; *Terry v State of New York*, 79 AD2d 1069, 1069 [1981]).

Mercure, J.P., Spain, Kavanagh and McCarthy, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as apportioned 50% of the liability to claimant, and, as so modified, affirmed.

**2.** Although there was conflicting testimony regarding whether this occurred before or after claimant was taken to the infirmary, this discrepancy does not affect our determination herein.